This matter comes before the court on complainant's motion to strike the answers of the several defendants and the counter-claim of individual defendants.
The bill is to foreclose a mortgage of the Bankers Trust Company originally in the sum of $175,000, given to secure the bond of that company which was also signed by the several individual defendants, both the mortgage and the bond having been executed under date of August 1st, 1927, and payable two and one-half years thereafter, with interest at the rate of 5% per annum. On January 3d 1930, the due date of the bond and mortgage was extended for a period of one year from February 1st, 1930, by an agreement in writing executed by the mortgagor and the mortgagee in which the individuals who signed the bond did not join. On August 12th, 1931, a further agreement, extending the due date of the bond and mortgage to a date not mentioned in the bill, was entered into by the mortgagor and mortgagee, which agreement was likewise not signed by the individual defendants. Another such agreement extending the due date to September 1st, 1934, was made, on November 1st, 1903, likewise not signed by the individual defendants; and from time to time thereafter, by mutual agreements not joined in by *Page 365 
the individual defendants, said due date was extended to August, 1938.
On August 17th, 1938, a further agreement was made, likewise not joined in by the individual defendants, under the terms of which the principal of the mortgage was reduced from the then balance of $121,000, upon the payment of $10,000, to $75,000, and the interest rate which had theretofore been reduced from five per cent. to four per cent. was further reduced to three per cent. That agreement extended the due date to August 1st, 1943, and provided for quarter-yearly amortization payments of $1,250 each, beginning August 1st, 1939. The $10,000 payment and the quarter-yearly payment due August 1st, 1939, and interest at the reduced rate up to February 1st, 1940, were duly paid, but default was made in the quarter-yearly payments due on November 1st, 1939, and February 1st, 1940.
On March 1st, 1940, the defendant Commissioner of Banking and Insurance assumed charge of the mortgagor trust company pursuant to statute because of its insolvency, and thereafter the Federal Deposit Insurance Corporation paid to the depositors the amount of their several deposits up to $5,000, as required by its contract of insurance.
The individual defendants who had signed the mortgage bond filed answers to the bill of complaint setting up these facts in exoneration of their liability upon the bond in the event of any deficiency arising upon foreclosure sale. In addition, the defendant Richards pleaded his discharge in bankruptcy proceedings in which his liability on said bond was listed, and several of the individual defendants filed counter-claims in which they sought to enjoin any proceedings by the mortgagee against them on account of their alleged liability.
All of the defendants answered, denying that the amount due for principal on said bond and mortgage was $109,750 with interest at the rate of 5% from February 1st, 1940, as alleged in the bill of complaint, and claiming that the true amount of the balance of said principal was $73,750, with interest from February 1st, 1940, at the rate of three per *Page 366 
cent. per annum because of the provisions of the agreement of August 17th, 1938, the benefit of which said defendants claimed.
The complainant thereupon moved to strike all of said answers on the ground that they presented no defense to the foreclosure bill, or in the alternative, that complainant be permitted to proceed with its foreclosure and sale of the mortgaged premises notwithstanding said answers, and that disposition of the issues touching the liability of the individual defendants be deferred until after such foreclosure and sale, the answers of the individual defendants being retained in the meantime. Complainant also moved to strike the counter-claim of the individual defendants on the ground that they stated no cause of action against the complainant.
Upon the return day of the notice to strike I chose the alternative suggested by the complainant and permitted the answers of the individual defendants, in so far as they raised an issue touching the liability of these defendants upon the bond secured by the mortgage in the event of a deficiency upon foreclosure sale, to stand, with the understanding that the complainant might proceed with its suit to final decree and sale; and with the further understanding that if a deficiency claim against these defendants is thereafter presented by complainant the defenses interposed by those answers would then, and not until then, be considered. The counter-claims of the individual defendants were stricken as there appeared no necessity for such affirmative relief as these defendants sought, the defense of the defendant Richards' discharge in bankruptcy, and other facts upon which the counter-claim was based, having been advanced in the answers which were retained as above stated.
Decision upon the motion to strike that portion of the answers which challenged complainants' claim that $109,750 with interest at 5% from February 1st, 1940, remained due upon the bond and mortgage, and claimed the benefit of the agreement of August 17th, 1938, reducing the principal debt to $73,750 with interest at 3% was reserved pending the submission of briefs by counsel touching the *Page 367 
proper construction of said agreement which seemed to involve purely legal questions. These briefs have now been submitted, and by agreement of counsel, affidavits explanatory of the transactions culminating in said agreement and subsequent thereto, and indicative of the intentions of the parties were submitted on behalf of both complainant and defendants. However, I do not consider these affidavits either pertinent or helpful in view of what I believe to be the plain language of the agreement itself which I think adequately and fully expressed the intent of the parties.
The complainant claims that the agreement, in so far as it provided for a reduction of the principal amount of the mortgage from $121,000 to $75,000 upon the payment of $10,000 and the reduction of the interest rate from 4% to 3% was conditional only — conditioned upon the subsequent performance by the mortgagor of all its undertakings thereunder — and that upon default by the mortgagor the principal sum remained as before, less only such cash payments as had been made on account thereof.
The defendants claim that the agreement was not thus conditioned, but that upon its execution, and the payment of the $10,000 as therein provided, the principal debt was irrevocably reduced to $75,000, and thereafter, by the payment of $1,250 on August 1st, 1939, to $73,750; and that the interest rate was irrevocably reduced to 3% per annum.
It seems to me that the agreement speaks for itself; that there is no ambiguity or uncertainty in its language, and that the intention of the parties must, therefore, be determined according to the plain meaning of the language used. A copy of the agreement is not attached to the bill of complaint but is attached to complainant's notice to strike. That agreement, after reciting the bond and mortgage, the balance of principal thereof, the current interest rate, and the desire of the mortgagor "to procure a reduction of the principal and interest of the said mortgage and extension of time for the payment thereof" provides as follows:
1. That upon the execution hereof there shall be paid to Pennsylvania by Bankers, or one or more of the Guarantors, in cash, the sum *Page 368 
of Ten Thousand Dollars ($10,000) on account of the principal of the said mortgage.
2. That in consideration of the said payment and upon the payment of the said sum of Ten Thousand Dollars ($10,000) the unpaid balance of principal of the said mortgage shall be thereby reduced from the sum of One Hundred and Twenty-one Thousand Dollars ($121,000) to the sum of Seventy-five Thousand Dollars ($75,000) conditioned as herein provided.
3. That the interest rate on the said mortgage during the term of this agreement shall be reduced from the rate of four per cent. (4%) per annum to the rate of three per cent. (3%) per annum, payable quarter-yearly.
4. That during the term hereof Bankers and the Guarantors, or one or more of them, shall make payments in reduction of the principal of the said mortgage of the sum of One Thousand Two hundred and Fifty ($1,250) dollars, quarter-yearly beginning August 1st, 1939, and a like sum on each quarter-yearly interest date thereafter.
5. That all taxes, municipal liens and assessments and water rent levied or assessed on the mortgaged premises shall be paid when due and payable, and duly receipted bills for each thereof shall be delivered to Pennsylvania within thirty (30) days after the due date thereof.
6. That Bankers shall maintain insurance on the mortgaged premises satisfactory to Pennsylvania and on deposit with it, and shall pay all premiums on the same when due, and the said insurance shall be payable to Pennsylvania and Bankers as their interests appear.
7. That the terms of this agreement shall continue until August 1st, 1943, unless default shall be made by Bankers under anyterm or provision hereof, and in the absence of such defaultpayment of the unpaid balance of principal shall not be requiredbefore said date.
8. That this agreement shall inure to the benefit of and be binding upon Bankers and the Guarantors, and each of them, and is conditioned upon the rights and obligations of the Guarantors, and each of them, not being affected, released or discharged from liability under the said bond and mortgage by anything herein contained, and is further conditioned upon all of the terms andconditions hereof being kept and performed by Bankers and theGuarantors, or one or more of them, and if default shall be madehereunder, then Pennsylvania shall be entitled to enforce theobligations of said bond and mortgage as herein set forth."
The underscoring in the above copy is mine. From a reading of the whole agreement, and especially in view of the underscored portions, I think it is clear that the agreement is conditional only, that the reduction of principal and interest was not irrevocable, and that upon the mortgagor's default in November, 1939, in the payment of the quarter-yearly installment as provided therein, the complainant had a right *Page 369 
to declare the agreement at an end and cancel the $36,000 credit theretofore given. That it did not do so until after the second default on February 1st, 1940, or after the Commissioner of Banking and Insurance took over the mortgagor Trust Company, and in the meantime accepted quarterly interest payments at the reduced rate of 3% was not, in my judgment, a waiver of that right. I conclude, therefore, that the amount of the principal of said bond and mortgage remaining unpaid is $109,750, as alleged in the bill of complaint, but that interest from February 1st, 1940, at the rate of 4% only, instead of 5%, is due, as the original interest rate had already been reduced to 4%, according to the proofs before me, prior to the execution of the agreement of August 17th, 1938. In so far as the answers challenge the principal amount alleged by the bill to be due, they will be stricken, but retained on the question of interest. If complainant concedes that it is entitled to only 4% instead of 5% interest on the $109,750 from February 1st, 1940, a reference to a master in the usual course may be had, subject, of course, to the issue of individual liability upon the bond in the event of a deficiency upon foreclosure sale, as raised by the retained answers, otherwise further proofs upon the question of interest may be taken.
I will advise an order accordingly. *Page 370